## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHANNON COYLE, Individually, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-0092-CVE-SAJ |
| | ) | |
| TRAVIS LUDWIG, Individually, and in | ) | |
| his Official Capacity, and ISRAEL | ) | |
| RODRIGUEZ, Individually, and in his | ) | |
| Official Capacity, CITY OF TULSA, | ) | |
| Municipal Corporation, State of Oklahoma | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is defendant City of Tulsa's ("City" or "Tulsa") Motion to Dismiss for Failure to State a Claim under the Eighth Amendment (Dkt. # 25), Tulsa's Motion to Strike Punitive or Exemplary Damage Claim (Dkt. # 26), and defendant Travis Ludwig's ("Ludwig") Motion for Summary Judgment (Dkt. # 39). The parties stipulated that defendant Israel Rodriguez be dismissed with prejudice from this case. Dkt. # 58. Plaintiff Shannon Coyle ("Coyle") first alleges that defendants deprived him of his federal civil rights in violation of 42 U.S.C. § 1983. Specifically, he alleges that defendants unlawfully searched his residence, unlawfully arrested him, falsified affidavits to secure the search warrant, and maliciously prosecuted him. He also claims that the City of Tulsa Police Department established a policy, practice, and custom of failing to provide training and supervision regarding lawful searches and arrests and knowingly failed to enforce the laws of the State of Oklahoma. Plaintiff argues that defendants' conduct violated the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff also brings claims for malicious prosecution, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress. Defendant City moves to dismiss plaintiff's claim under

the Eighth, Fifth, and Fourteenth Amendments under Fed. R. Civ. P. 12(b)(6).  Defendant Ludwig

moves for summary judgment on all plaintiff's claims on the grounds that he had probable cause to

seek and obtain a search warrant and that no constitutional violations occurred.

## I.

Ludwig is an officer at the Uniform Division North at the Tulsa Police Department and has

been a CLEET Certified police officer in Oklahoma since 1995.  Dkt. # 39, Ex. 1, Ludwig Affidavit.

Sometime in late April or early May 2005, Ludwig claims that he stopped a vehicle operated by

Coyle's wife, Crystal Garr ("Crystal").  Id.  Crystal complained of abusive treatment by her husband

and did not dispute that Coyle dealt drugs from their house.  Ludwig "talked to [Crystal] about

potentially her coming up with some sort of subject that would be willing to conduct a controlled

buy from [plaintiff's] residence so that [Ludwig] could try to apply for a Tulsa County search

warrant." Dkt. # 57, Ex. 4, Ludwig Deposition, at 2.  Crystal put Ludwig in contact with her brother,

Christopher Garr ("Christopher").

Ludwig and Christopher initiated a controlled buy on May 6, 2006.  Dkt. # 39, Ex. 1, Ludwig

Affidavit, ¶ 6.  According to the affidavit for the search warrant discussed below, Ludwig conducted

a search of Christopher's body and found no monies or controlled dangerous drugs on his person.

Ludwig then gave Christopher twenty dollars with which to buy a controlled substance from Coyle.

Christopher entered Coyle's residence while Ludwig "maintained constant vigil on the residence."

Dkt. # 39, Ex. 3, at 2.  Ludwig maintains that no one else entered the house while Christopher was

inside.  Christopher emerged from the residence a short time later and met directly with Ludwig.

Ludwig conducted a second search of Christopher's person and recovered a quantity of

methamphetamine and no money.  Id.  Coyle maintains that this controlled buy never took place.

2

On May 6, 2005, Ludwig prepared and submitted an affidavit in support for a search warrant for Tulsa County Judge Clancy Smith.  The purpose of the search was for the following evidence from Coyle's residence at 330 South 44th West Avenue in Tulsa, Oklahoma: methamphetamine, fruits, instrumentalities, monies, records, unexplained wealth, weapons, and proof of residency.  Dkt. # 39, Ex. 2, Affidavit for Search Warrant.  In support of probable cause, the affidavit set forth several facts: (1) complaints from residents at plaintiff's building that there was substantial short-term traffic coming and going from plaintiff's residence, consistent with narcotics sales; (2) a statement from beat Officer Linda Ritter who worked in West Tulsa and knew the residence to be a place where methamphetamine was sold; (3) plaintiff's prior drug charge; (4) Ludwig's surveillance of plaintiff's residence indicating a significant amount of short-term traffic; and (5) the successful execution of a controlled buy through a confidential informant, as described above.  Id.

After securing the search warrant, Ludwig and other Tulsa police officers searched Coyle's residence.  They found more than 40 grams of methamphetamine, more than 40 grams of marijuana, and other drug paraphernalia.  On May 11, 2005, Coyle was arrested and charged with Trafficking in Illegal Drugs, Possession of a Controlled Drug in Presence of a Child under 12 Years of Age (4 counts), Failure to Obtain a Drug Tax Stamp, Possession of Marijuana, and Possession of Paraphernalia.  Dkt. # 39, Ex. 7.

After posting bond for his release, Coyle discovered that Ludwig was having an affair with Crystal.  While the affair is undisputed, there is a dispute as to when the affair began.  Plaintiff claims that Crystal and Ludwig had an intimate relationship before Ludwig obtained the search warrant discussed above.  Ludwig maintains that his relationship with Crystal did not begin until June 19, 2005 "after a chance encounter at a Tulsa bar and restaurant." Dkt. # 39, at 10.

3

In early August 2005, before the preliminary hearing regarding the drug trafficking charges, Coyle sent Ludwig several text and voice messages. Some of these text messages referenced Ludwig's relationship with Crystal; other messages were violent in nature. See Dkt. # 39, Ex. 9. Under the direction of Sargent Mike Williams, Ludwig documented these messages in a police report on or about August 10, 2005. Dkt. # 39, Ex. 11. Then on August 19, 2005, he filled out an affidavit describing the messages; the district attorney subsequently filed four charges against Coyle for intimidating a witness under OKLA. STAT. tit. 21, § 455. Dkt. # 39, Ex. 14.

Ludwig advised the prosecutor that he and Crystal were engaged in an intimate relationship. On October 20, 2005, the district attorney dismissed the intimidation of witness charges against Coyle, with leave to re-file. Dkt. #39, Ex. 17, 18. October 21, 2005, the district attorney dismissed the illegal drug trafficking charges against Coyle, with leave to re-file. Dkt. # 39, Ex.15, 16.

## II.

### A.

When reviewing a motion to dismiss under Rule 12(b)(6), the Court must construe the allegations of the complaint as true and view the allegations in the light most favorable to the nonmoving party. Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). The Tenth Circuit has referred to dismissal under Rule 12(b)(6) as a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006) (citing Duran v. Carris, 238 F.3d 1268, 1270 (10th Cir. 2001)). A Rule 12(b)(6) motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." Sutton v. Utah State School for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

**B.**

Defendant City moves to dismiss plaintiff's claim under the Eighth Amendment to the United States Constitution.  In plaintiff's first amended complaint, he states that the Court has jurisdiction over his claim based on "his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment."  Dkt. # 18, ¶ 2.  In his first claim for relief based on § 1983, plaintiff states that he "has suffered damages in the form of physical, mental and emotional pain and was deprived of [his] right . . . not to be subjected to any cruel or unusual punishment as secured to him under the Eighth Amendment to the United States Constitution." Id., ¶ 28.  Defendant City argues that plaintiff has no Eighth Amendment claim because he is a pretrial detainee.  Dkt. # 25, at 2.  According to the Supreme Court:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . .  [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

Ingraham v. Wright, 430 U.S. 651, 671-72, n.40 (1977); see also Bell v. Wolfish, 441 U.S. 520, 537 n.16 (1979).  Since plaintiff's claims of constitutional violations are grounded in conduct prior to any adjudication, the Eighth Amendment is inapplicable to this case.  Thus, the Court grants defendant City's motion to dismiss plaintiff's claim based on the Eighth Amendment.

**B.**

Defendant City also moves to dismiss plaintiff's claims under the Fifth and Fourteenth Amendment.  The Supreme Court and the Tenth Circuit have held that a plaintiff's claim for wrongful search and seizure are governed only by the Fourth Amendment and not the more generalized substantive due process clause of the Fourteenth Amendment  Albright v. Oliver, 510 U.S. 266 (1994); Taylor v. Meacham, 82 F.3d 1556, 1560 (10th Cir. 1996).  Plaintiff's § 1983 claim, the only federal claim, is based on defendants' alleged illegal search and seizure.  Therefore, the Fourth Amendment, not the Fifth or Fourteenth Amendments, governs this case.  The Court grants defendant City's motion to dismiss plaintiff's Fifth and Fourteenth Amendment claims.

**III.**

**A.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment.  Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

**B.**

In his § 1983 claim, plaintiff claims that Ludwig conducted an unconstitutional search of plaintiff's home[1], unlawfully arrested and detained plaintiff, provided false affidavits to the issuing judge to secure the search warrant, and maliciously prosecuted plaintiff.  The Court will address plaintiff's § 1983 solely in the Fourth Amendment context.[2]  Ludwig argues that plaintiff fails to establish that Ludwig violated plaintiff's constitutional rights.  In the alternative, Ludwig argues that he is entitled to qualified immunity.  The Court finds that plaintiff has failed to show a genuine issue of material fact that Ludwig violated his constitutional rights; therefore, defendant Ludwig is entitled

---

[1]     Plaintiff maintains that his residence was unlawfully searched on two occasions.  However, since the first alleged illegal search concerns defendant Rodriguez, who was dismissed with prejudice by stipulation of all parties, the Court need not address it.

[2]     In fact, plaintiff brings his claim under the Eighth and Fourteenth Amendments as well.  As addressed above, since plaintiff was a pretrial detainee, the Eighth Amendment is inapplicable.  Additionally, for reasons expressed in Section II(B), above, plaintiff's claim arises under the Fourth Amendment, not the Fourteenth Amendment.

to summary judgment on plaintiff's § 1983 claim for unlawful search, unlawful seizure, and malicious prosecution.  The Court need not reach the issue of qualified immunity.

1.     **Search of Plaintiff's Residence**

Plaintiff contends that Ludwig violated his Fourth Amendment rights by procuring a search warrant without probable cause.  Specifically, plaintiff claims that Ludwig obtained the warrant to search plaintiff's residence "based on a false and misleading Affidavit which was not supported by probable cause."  Dkt. # 57, at 14.  By contrast, Ludwig argues that he had probable cause to conduct a search of plaintiff's residence, and the probable cause was adequately set forth in the affidavit for the search warrant.  Ludwig contends that the affidavit was neither false nor misleading.

There is a "presumption of validity with respect to the affidavit supporting the search warrant."  Franks v. Delaware, 438 U.S. 154, 171 (1978).  But the Supreme Court has held that it is a violation of the Fourth Amendment for a warrant affiant to "knowingly, or with reckless disregard for the truth," include false statements in an affidavit for a warrant.  Id. at 155-56.  Where false statements are included in a warrant, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit.  Id.  In addition, it is a violation of the Fourth Amendment  for an affiant to knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause.  Stewart v. Donges, 915 F.2d 572, 581-83 (10th Cir. 1990). In a case involving information omitted from an affidavit, probable cause is determined "by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant."  Id. at 582.  The Tenth Circuit has applied the principles outlined in Franks and Stewart to § 1983

8

civil rights actions.  See Taylor v. Meacham, 82 F.3d 1556 (10th Cir. 1996); Wolford v. Lasater, 78

F.3d 484 (10th Cir. 1996).

Ludwig's affidavit for the search warrant set forth five facts which give rise to a finding of

probable cause: (1) complaints from residents at plaintiff's building that there was substantial short-

term traffic coming and going from plaintiff's residence, consistent with narcotics sales; (2) a

statement from beat Officer Linda Ritter "who works that area of West Tulsa and knows this

residence to be a house from where methamphetamine is sold," Dkt. # 39, Ex. 3, at 1; (3) plaintiff's

prior drug charge of possession of marijuana and paraphernalia; (4) Ludwig's surveillance of

plaintiff's residence indicating a significant amount of short-term traffic; and (5) the successful

execution of a controlled buy through a confidential informant, later determined to be Christopher

Garr.  Id.  Plaintiff claims, "[A]ll statements contained within the Affidavit for Search Warrant

regarding a controlled buy, short term traffic coming and going from my residence at the time and

all statements about controlled buy, my arrests for drug offenses and all other statements about me

are false."  Dkt. # 39, at 16 (quoting plaintiff's response to Interrogatory No. 3).  However, Ludwig

maintains that each of these statements is true and that there was no omitted evidence that would

have vitiated the showing of probable cause.

Ludwig provides supporting evidence that there were, in fact, complaints from residents

about short-term traffic and potential drug activity.  According to the affidavit of Mike Williams,

Sargent of the Tulsa Police Department:

> [I]n the spring of 2005, I became aware of a citizen complaint reporting suspected
> drug activity at a house located at 330 S. 44th W. Ave [i.e., plaintiff's residence].
> Thereafter, I observed the location on a number of occasions and noted a high
> volume of short-term traffic at the residence, consistent with narcotics sales . . . . As
> a result of the complaint and my own observations, I assigned a member of my

squad, Travis Ludwig to investigate the activity and begin patrolling the area as frequently as possible and see if he could discover any criminal activity.

Dkt. # 39, Ex. 4., Williams Affidavit, ¶ 2. Plaintiff offers no evidence that the information in the search warrant affidavit concerning resident complaints is false. He merely states that, by itself, this information "is not enough without other corroborative evidence to obtain a search warrant." Dkt. # 57, at 16. Additionally, plaintiff did not submit any evidence that Ludwig did not personally observe a volume of short-term traffic at the Coyle residence.

Ludwig also presents evidence to support the statement in the affidavit that Ritter witnessed activity consistent with narcotics sales while she was on duty. In her affidavit, Ritter states, "I also personally observed the residence at 330 S. 44th W. Ave., and noted an unusually high volume of people going to and leaving from the residence after very brief stays inside the house." Dkt. # 39. Ex. 5, Ritter Affidavit, ¶ 6. Again, plaintiff provides no evidence that the statements in the search warrant affidavit concerning Officer Ritter were false.

It is also uncontested that plaintiff had been previously arrested for drug-related offenses. Specifically, plaintiff had been charged with possession of marijuana and paraphernalia in March 2005. Plaintiff argues that "[i]t cannot be inferred, nor can an officer objectively believe that a person who has been arrested on a simple possession charge would also be a drug dealer." Dkt. # 57, at 16. The Court agrees that the prior drug offense, on its own, is not sufficient to establish probable cause to conduct a search of plaintiff's residence; however, this evidence, particularly in conjunction with the evidence addressed above, is certainly relevant to the finding of probable cause.

Plaintiff's main objection concerns the fifth piece of information cited in the search warrant affidavit concerning the confidential informant, Christopher Garr. The description of the controlled buy, as recited in the search warrant, is detailed in Section I, above. Plaintiff contends that "there

10

are two competing stories in this case." Dkt. # 57, at 18.  On the one hand, Ludwig states that his relationship with Crystal did not begin until June 18, 2005, after plaintiff had been arrested and charged with selling methamphetamine. Dkt. # 57, Ex. 4, at 3.  On the other hand, plaintiff contends that Ludwig and Crystal began an intimate relationship before Ludwig obtained the search warrant. According to plaintiff, "It was this relationship that led Defendant Ludwig to get the Plaintiff out of the way so that he could have Crystal Coyle [Garr] to himself . . . . This relationship is what led to the 'controlled buy' of Plaintiff's residence." Dkt. # 57, at 18.  From these statements, plaintiff jumps to the argument that "[t]he controlled by never took place" and that "Plaintiff has never sold drugs from his residence nor has he sold drugs at anytime to Christopher Garr." Id.  It is unclear whether plaintiff argues that (1) Ludwig lied in the search warrant affidavit that the controlled buy actually took place, and hence the affidavit, on its face, was false, misleading, and not supported by probable cause; or (2) Ludwig failed to tell the issuing judge that he was having an affair with plaintiff's wife, and hence the affidavit lacked a material fact that would have vitiated probable cause.  The Court will address both arguments.

There is no genuine issue of material fact regarding the truth of the statements concerning the controlled buy in the search warrant affidavit.  Defendant sets forth substantial evidence in the summary judgment record that the controlled buy took place as described in the search warrant affidavit.  Christopher Garr's testimony in his March 5, 2006 sworn statement directly supports Ludwig's affidavit for the search warrant:

> A [Garr]: Travis [Ludwig] asked me to help him and – and Crystal was there and Travis gave me 20 bucks.  I think he wrote down the numbers off the 20 dollar bill and Crystal left and went on back to the house and then I went over there and asked Shannon [Coyle] for a sack.
> Q: A sack?

A: Of dope.  And I told him all I had was 20 bucks and he sold it to me – well, before I left the school, Travis shook me down, made sure I had nothing on me, emptied my pockets, everything like that.  And then when I came back he patted me down, I didn't have no money, I gave him the dope, he tested it, and Crystal showed up at that time.  He tested it and then it read dirty, it was positive for dope and I left then on my own.

Q: All right.  We've got here in front of use an affidavit for a search warrant that's numbered 2005-031821, State of Oklahoma versus Shannon Coyle.  Have you had an opportunity before he got started today to read this, Chris?

A: Yes, sir.

. . . .

Q: "Your affiant further states that while the CI [Confidential Informant] was inside the residence to be searched, the CI observed more methamphetamine that was packaged for sale."  Is that true?

A: Yes.

Q: "Your affiant further states that a field test was conducted on the above purchased substance which indicated a presumptive positive filed test for the presence of methamphetamine."  Is that true?

A: Yes.

Dkt. # 39, Ex. 7, Christopher Garr Sworn Statement, at 2-3.  Additionally, Crystal testified that she witnessed the controlled buy between Christopher and plaintiff.  Dkt. # 39, Ex. 9, Crystal Garr Sworn Statement, at 2-4.  By contrast, plaintiff submitted no evidence that the controlled purchase never occurred.  His only "evidence" is a conclusory statement in his affidavit:

Christopher Garr never made a controlled buy of methamphetamine, or any other drug for that matter, from me or a transacted a drug buy out of my residence to the best of my knowledge.  Christopher Garr came to me sometime after I was arrested for drug possession and told me that he learned from Crystal Coyle that Defendant Ludwig used him in the affidavit for search warrant, when in fact he didn't participate.

Dkt. # 57, Ex. 2, Coyle Affidavit, ¶ 10.  Ultimately, Coyle's mere assertion that the controlled buy did not take place is not sufficient to create a genuine issue of material fact that Ludwig lied in the affidavit for the search warrant.  See Dart Indus. v. Plunkett Co. of Okla., 704 F.2d 496, 498 (10th Cir. 1983) ("A party resisting a motion for summary judgment must do more than make conclusory allegations, it must 'set forth specific facts showing that there is a genuine issue for trial.'").

At most, plaintiff's statement suggests that Christopher lied to Ludwig about the events in plaintiff's residence. Even assuming arguendo that Christopher lied to Ludwig and in fact bought the methamphetamine in plaintiff's residence but from someone other than plaintiff,[3] Ludwig still had probable cause to search plaintiff's residence. In determining whether there was probable cause, "the test is whether the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the *place to be searched*." United States v. Nolan, 199 F.3d 1180, 1183 (10th Cir. 1999) (emphasis added); see also Illinois v. Gates, 462 U.S. 213, 238 (1983) (probable cause exists if the affidavit demonstrates "a fair probability that contraband or evidence of a crime will be found in a *particular place*" (emphasis added)); United States v. Artez, 389 F.3d 1106, 1113 (10th Cir. 2004) (noting that police would still have probable cause even if the controlled purchase of narcotics did not implicate the defendant personally but implicated one of the several other individuals residing at the defendant's home). Thus, even if Christopher in fact bought the drugs from someone other than plaintiff, Ludwig still had reasonable cause to search plaintiff's house since the transaction occurred there.

Next, the Court will address plaintiff's argument that Ludwig omitted evidence of his affair with plaintiff's wife in the affidavit for the search warrant, and such information would have vitiated probable cause. The Court notes that there is a dispute about whether, at the time he sought a search warrant, Ludwig was having an affair with Crystal. Ludwig claims that the affair did not begin until June 18, 2005; Coyle claims that the affair commenced before Ludwig obtained the search warrant

---

[3]     Indeed, in one of his text messages to Ludwig, plaintiff implicitly admitted that Christopher bought methamphetamine, but from another person in plaintiff's residence: "I DON'T THINK UR CONTROLLED BUY WAS VERY CONTROLLED IT WASN'T EVEN OFF ME HE BOUGHT OFF BRIAN LINDSEY NOT ME JUST ASK UR CI HE WILL TELL U WAT I WANT." Dkt. # 39, Ex. 9.

and prompted Ludwig to "set up" plaintiff.  This dispute concerning when the relationship between Ludwig and Crystal began is not material to the issue of probable cause, however.  Ludwig's relationship with Crystal, however inappropriate, concerns Ludwig's <u>subjective</u> reasons for obtaining the search warrant.  However, probable cause is based on an <u>objective</u> reasonableness inquiry; the police officer's subjective beliefs or motivations are irrelevant.  <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 21-22 (1968); <u>Maryland v. Macon</u>, 472 U.S. 463, 470-71 (1985) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken."); <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989) (in a Fourth Amendment excessive force context, noting that an "officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation" and noting that "an officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force"); <u>United States v. Neff</u>, 300 F.3d 1217, 1222 (10th Cir. 2002) ("In measuring the actions of a police officer under the Fourth Amendment, . . . we look at the objective facts, not the officer's state of mind.").  The relevant inquiry is not whether it was objectively reasonable for Ludwig to have an affair with Crystal or whether Ludwig had a personal stake in securing plaintiff's arrest; rather, the relevant inquiry is whether Ludwig reasonably secured a search warrant based on probable cause.  In other words, if another officer had been faced with the same facts confronting Ludwig, would that officer have had probable cause to conduct a search?  The fact that Christopher told Ludwig that he bought methamphetamine from either plaintiff or someone else in plaintiff's residence, in conjunction with the other evidence set forth in the search warrant affidavit, would provide any officer–regardless of

subjective motivation–with probable cause to search plaintiff's home.  Thus, regardless of when Ludwig's affair with Crystal began, Ludwig had probable cause to conduct a search.  His informing the issuing judge that he was having an affair with Crystal, assuming _arguendo_ that the affair began before the search warrant was executed, would not have vitiated Ludwig's probable cause because the facts underlying the probable cause are wholly independent from Ludwig's subjective state of mind.

In summary, as a matter of law, the Court finds that Ludwig had probable cause to search plaintiff's residence.  Plaintiff fails to show that there is a genuine issue of material fact that either the affidavit for the search warrant contained false or misleading statements or that it omitted evidence that would have vitiated the probable cause.  While there is a factual dispute regarding when Ludwig's affair with Crystal began, this does not constitute a genuine issue of material fact concerning the probable cause issue.  Regardless of Ludwig's subjective state of mind, the objective facts show that a reasonable officer in Ludwig's position would have had probable cause to conduct a search of plaintiff's residence.  Therefore, the Court finds that defendant Ludwig is entitled to summary judgment on plaintiff's § 1983 claim based on the alleged unlawful search.

### 2.    Arrest of Plaintiff

Given that the search of plaintiff's residence was lawful, it follows that plaintiff's subsequent arrest was also a lawful "seizure."  Probable cause exists to arrest if "facts and circumstances within the arresting officer's knowledge and of which he or she had reasonable trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."  Jones v. City and County of Denver, 854 F.2d 1206, 1210 (10th Cir. 1988); see also Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995); Tanberg v. Sholtis, 401 F.3d 1151, 1159 (10th

15

Cir. 2005).  Here, after lawfully searching plaintiff's residence, police found approximately 33.31 grams of methamphetamine and a functional black digital gram scale on plaintiff's person.  Dkt. # 39, Ex. 7, Police Report.  Additionally, police found approximately 5.34 grams of methamphetamine, 44.44 grams of marijuana, and smoking and packaging paraphernalia at plaintiff's residence.  Id.  According to plaintiff, however, "I did not store any drugs or paraphernalia inside of the residence, nor was I in possession of any drugs on [the day of the arrest]."  Dkt. # 57, Ex. 2, Coyle Affidavit, ¶ 11.  Once again, the mere assertion that there were no drugs on his person or at his residence on the day of the arrest is not sufficient to create a genuine issue of material fact as to the lawfulness of plaintiff's arrest.  As a matter of law, the arrest was lawful, and plaintiff's Fourth Amendment rights were not violated.

### 3.  Malicious Prosecution

Plaintiff also brings a § 1983 malicious prosecution claim against defendant Ludwig, claiming that his prosecution was "unreasonable and totally without factual or legal justification." Dkt. # 18, ¶ 26(v).  The Tenth Circuit has recognized the viability of malicious prosecution claims under § 1983.  Wolford, 78 F.3d at 484; Taylor, 82 F.3d at 1560.  In a § 1983 claim for malicious prosecution, the Tenth Circuit "takes the common law elements as the 'starting point' for the analysis . . . but always reaches the ultimate question, which it must, of whether the plaintiff has proven a *constitutional* violation."  Taylor, 82 F.3d at 1561 (emphasis in original).  The Court addresses plaintiff's state claim for malicious prosecution below; however, it need not reach his § 1983 claim for malicious prosecution because, as discussed above, plaintiff's constitutional rights were not violated as a matter of law.  Plaintiff's § 1983 claim for malicious prosecution therefore fails, and defendant Ludwig is entitled to summary judgment on that claim.

16

## C.

Plaintiff's second claim for relief, based on state law, is for malicious prosecution. Dkt. # 18, at 9. Under Oklahoma law, the elements of malicious prosecution are: (1) the bringing of the original action by the defendant; (2) its successful termination in favor of plaintiff; (3) want of probable cause to bring the action; (4) malice; and (5) damages. Parker v. City of Midwest City, 850 P.2d 1065, 1067 (Okla. 1993). The existence of probable cause, defined as "reasonable cause or an honest suspicion or belief . . . founded upon facts sufficiently strong to warrant the average person in believing the charge to be true," is a complete defense to a malicious prosecution claim. Roberts v. Goodner's Wholesale Foods, Inc., 50 P.3d 1149, 1152 (Okla. Civ. App. 2002) (internal quotation marks and citations omitted). Here, plaintiff's claim of malicious prosecution based on the drug trafficking charge fails because the Court already determined that there was probable cause for the search of plaintiff's residence and his arrest.

Plaintiff also brings a claim of malicious prosecution based on the intimidation of a witness charge. Following his arrest and after learning of the affair between Ludwig and Crystal, plainitff sent Ludwig numerous threatening text and voice messages. The messages included statements such as: "WATS UP BITCH U READY FOR UR ASS WHIPPIN YET?" and "OR SHUT THE FUCK UP BOUT SUM1 GETIN HURT REAL BAD UNLESS U LIKE CN BONE DOCTORS BOY." Dkt. # 39, Ex. 7. Ludwig filed a report documenting these messages, and the District Attorney subsequently filed charges for four separate charges of Intimidation of a Witness under OKLA. STAT.

tit. 21, § 455.[4]  While plaintiff does not deny sending these text messages, he claims that Ludwig misrepresented that the text messages were an attempt to prevent Ludwig from testifying in the drug case; rather, he claims that the messages merely "expressed his disgust with Defendant Ludwig having an affair with his wife."  Dkt. # 57, at 19.  Regardless of the actual reason for sending these voicemail and text messages, the Court finds that, as a matter of law, Ludwig had probable cause to believe that plaintiff had violated OKLA. STAT. tit. 21, § 455.  Indeed, there is no question that the messages were violent in nature, and an objective person would view these messages as a threat. Since there is no genuine issue of material fact that there was probable cause for filing charges under OKLA. STAT. tit. 21, § 455, the Court grants defendant's motion for summary judgment on plaintiff's malicious prosecution claim based on the intimidation of a witness charge.

Additionally, plaintiff's malicious prosecution claim, based on both the drug trafficking and intimidation of a witness charges, fails to satisfy the requirement that the actions were successfully terminated in favor of plaintiff.  On October 20, 2005, the District Attorney filed a motion to dismiss the intimidation of a witness charges against plaintiff.  Dkt. # 39, Ex. 17.  On October 21, 2005, the District Attorney also filed a motion to dismiss the drug trafficking charges. Dkt. # 39, Ex. 15.  In both instances, the judges ordered the charges dismissed and granted leave to the State to re-file charges.  Dkt. # 39, Ex. 16, Ex. 18.  In Glasgow v. Fox, 757 P.2d 836, 838 (Okla. 1988), the Oklahoma Supreme Court held that a dismissal without prejudice was not sufficient to meet the malicious prosecution requirement of successful termination.  See also Neely v. First State Bank,

---

[4]     OKLA. STAT. tit. 21, § 455 reads, in pertinent part: "Every person who . . . threatens or procures physical or mental harm through force or fear with intent to prevent any witness from appearing in court to give his testimony, or to alter his testimony, is, upon conviction, guilty of a felony punishable by not less than one (1) year not more than ten (10) years in the State Penitentiary."

Harrah, Oklahoma, 975 P.2d 435, 437 (Okla. 1998).  The court explained that malicious prosecution actions "should be defined narrowly so as to protect Oklahoma's policy which does not look favorably on malicious prosecution actions."  Id.  Here, there was no successful termination showing plaintiff to be without fault.  Since this element of the malicious prosecution claim is missing, the Court grants defendant Ludwig's motion for summary judgment on that claim.

### D.

Plaintiff's third claim for relief is for false imprisonment.  Dkt. # 18, at 10.  Under Oklahoma law, the essential elements of false imprisonment are: (1) the detention of a person against his will, and (2) the unlawfulness of the detention.  Walters v. J.C. Penney Co., Inc., 82 P.3d 578, 583 (Okla. 2003).  As previously addressed, there was lawful justification for plaintiff's detention; therefore defendant Ludwig is entitled to summary judgment on this claim.

### E.

Plaintiff also seeks relief for Ludwig's alleged intentional infliction of emotional distress. Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage.  See, e.g., Gaylord Entm't Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998).  The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id.  In Breeden v. League Servs. Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained,

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"  The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376.

A plaintiff alleging intentional infliction of emotional distress must establish the following elements: (1) defendant acted intentionally or recklessly; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct caused plaintiff emotional distress; and (4) the emotional distress was severe. Trentadue v. United States, 397 F.3d 840, 856 (10th Cir. 2005) (applying Oklahoma law); Computer Publ'ns, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002). Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue, 397 F.3d at 856 n.7. If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the Court should submit the claim to the jury to determine whether defendant's conduct could result in liability. Id. The Court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress. Id.

Here, plaintiff argues that "Defendant Ludwig acted recklessly and intentionally in his quest to rid Plaintiff from Crystal Coyle's life so that Ludwig could keep him for himself." Dkt. # 57, at 23. Plaintiff continues, "Attempting to throw an individual in prison so that you can keep that individual's wife is outrageous." Id. Despite these colorful statements, the Court finds that the summary judgment record does not show that defendant Ludwig engaged in extreme or outrageous behavior, or that plaintiff suffered severe emotional distress. Ludwig's affair with Crystal, however immoral or indecent, does not constitute outrageous behavior. Moreover, even if that affair took place before Ludwig procured the search warrant, the Court already determined that, as a matter of law, Ludwig had probable cause to search plaintiff's residence and arrest him. Therefore, it follows

20

that the search, arrest, and resulting prosecution were not outrageous. Additionally, the record is completely lacking in evidence that plaintiff suffered severe emotional harm because of any actions by Ludwig. Therefore, the Court grants Ludwig's motion for summary judgment as to plaintiff's claim for intentional infliction of emotional distress.

### F.

In the alternative to his claim of intentional infliction of emotional distress, plaintiff alleges that defendant Ludwig is liable for negligent infliction of emotional distress. Oklahoma does not recognize a tort claim for negligent infliction of emotional distress independent from a common law negligence claim. Lockhart v. Loosen, 943 P.2d 1074, 1081 (Okla. 1997); see also Wilson v. Muckala, 303 F.3d 1207, 1213 (10th Cir. 2002) (applying Oklahoma law). Further, in Oklahoma, damages for negligent infliction of emotional distress are recoverable only if accompanied by physical injury. Wilson, 303 F.3d at 1213 (citing Ellington v. Coca Cola Bottling Co. of Tulsa, 717 P.2d 109, 111 (Okla. 1986)). Since plaintiff did not allege negligence, and has not pled or raised a genuine issue of material fact as to the necessary element of physical injury, Ludwig is entitled to summary judgment on plaintiff's claim of negligent infliction of emotional distress. Id.

### IV.

While defendant City has not moved to dismiss or moved for summary judgment on all of the claims against it, the Court will enter summary judgment on plaintiff's claims against Tulsa, sua sponte. See Graham v. City of Oklahoma City, 859 F.2d 142, 144 (10th Cir.1988) (per curiam) ("district courts are widely acknowledged to possess the power to enter summary judgments, sua sponte, so long as the losing party was on notice that [he] had to come forward with all [his] evidence."). Here, plaintiff was on notice that he had to come forward with all his evidence because

defendant Ludwig filed for summary judgment on all plaintiff's claims, and the claims against Ludwig in his official capacity and against the City of Tulsa are directly linked to those individual claims.

"A claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised." Webber v. Mefford, 43 F.3d 1340, 1344-45 (10th Cir. 1994); see also Taylor, 82 F.3d at 1564. Since the Court has found that, as a matter of law, Ludwig did not commit a constitutional violation, the Court dismisses the § 1983 claim against Ludwig in his official capacity and against Tulsa.

Additionally, the Court grants summary judgment, sua sponte, for defendant City on plaintiff's other claims. Plaintiff's malicious prosecution claim under state law fails for the reasons set forth in Section III(C), above. As plaintiff's detention was lawful, the City cannot be held liable for false imprisonment. Also, since the Court finds that, as a matter of law, Ludwig's conduct was not sufficiently outrageous to maintain a claim for intentional infliction of emotional distress, it follows that the City cannot be held liable for this tort. As noted in Section III(F), plaintiff has failed to present a sufficient claim for negligent infliction of emotional distress, therefore the Court grants summary judgment on that claim as well. Thus, the Court finds, sua sponte, that Tulsa is entitled to summary judgment on all of plaintiff's claims.

## V.

In summary, the Court grants defendant Tulsa's motion to dismiss plaintiff's claims under the Eighth, Fifth, and Fourteenth Amendments. It also grants defendant Ludwig's motion for summary judgment on all of plaintiff's claims. While the Court is not unmindful of defendant

Ludwig's behavior, the Court finds that, as a matter of law, the search of plaintiff's residence and subsequent arrest were lawful.  Plaintiff has failed to raise a genuine issue of material fact that plaintiff presented false information in the affidavit for search warrant or that he omitted information that would have vitiated probable cause for the search.  As there were no constitutional violations, plaintiff's § 1983 claim for unlawful search, unlawful seizure, and malicious prosecution fails.  The Court also finds that Ludwig is entitled to summary judgment on plaintiff's claim for malicious prosecution under Oklahoma law since he had probable cause and since the actions were not successfully terminated in plaintiff's favor.  Finally, Ludwig is entitled to summary judgment on the plaintiff's claims for false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Since the Court finds that, as a matter of law, there were no constitutional violations, it grants summary judgment, sua sponte, for defendant Tulsa on plaintiff's § 1983 claim for improper training.  The Court also grants summary judgment, sua sponte, for defendant Tulsa on plaintiff's other claims because its findings with respect to Ludwig in his individual capacity mean that, by definition, the City of Tulsa and Ludwig in his official capacity cannot be held liable.

**IT IS THEREFORE ORDERED** that defendant City of Tulsa's Motion to Dismiss for Failure to State a Claim under the Eighth Amendment (Dkt. # 25) is **granted**.  Defendant Travis Ludwig's Motion for Summary Judgment (Dkt. # 39) is also **granted**.  The Court also grants summary judgment, sua sponte, for defendant City of Tulsa on all of plaintiff's claims.  Tulsa's Motion to Strike Punitive or Exemplary Damage Claim (Dkt. # 26) is **moot**.  A separate judgment is entered herewith.

**DATED** this 25th day of October, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

23