# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

SHANNON COYLE, )
)
    Plaintiff, )
)
vs. ) Case No. 06-CV-092 CVE/SAJ
)
TRAVIS LUDWIG, Individually, and in his )
Official Capacity, ISREAL RODRIGUEZ, )
Individually, and in his Official Capacity, )
CITY OF TULSA, a Municipal Corporation, )
State of Oklahoma, )
)
    Defendants. )

## REPORT AND RECOMMENDATION

Comes on for report and recommendation Defendant Rodriguez's Application for Indemnification Against Defendant City of Tulsa [Dkt. #74], and the Court, having considered the argument and authorities of counsel, submits the following:[1]

## I. BACKGROUND FACTS

On February 14, 2006, Plaintiff Shannon Wayne Coyle ("Coyle") filed a §1983 Complaint against Tulsa City Police Officers Travis Ludwig ("Ludwig") and Israel Rodriguez ("Rodriquez") and the City of Tulsa ("City"), alleging violation of his constitutional rights. On February 18, Rodriguez submitted a request for legal representation to the City.[2] By a 5-4 vote on March 2, the Tulsa City Council declined to provide legal counsel for Rodriguez.

---

[1] Co-defendant Travis Ludwig filed separate motion for indemnification which will be addressed by separate report and recommendation.

[2] All dates reference the year 2006 unless otherwise noted.

1

Thereafter, Rodriguez made application for legal representation to the Fraternal Order of Police Legal Defense Plan[3] ("Plan"), of which he was, and is, a member. Based on the City's refusal to provide legal representation, the Plan approved Rodriguez's request for legal representation. However, §18(C) of the Plan provides:

> In the event of any payment under the Plan, the Plan shall be subrogated to the extent of payment to the Participant's right of recovery against any person, agency, organization, political subdivision, or any other entity. The Participant shall . . . do whatever is necessary to secure and pursue such rights [and] do nothing to prejudice such rights.

On March 27, Rodriguez filed an Answer to Plaintiff's Complaint in his individual capacity. Plaintiff moved for default judgment based on the fact that Rodriguez had not answered in his official capacity. The District Court denied Plaintiff's motion, giving the parties additional time to properly frame the issues, which included obtaining service on the City. Plaintiff properly served the City and filed Amended Complaint on April 20. Rodriguez filed an Amended Answer on April 28.

Plaintiff sought damages from defendants Ludwig, Rodriguez, and the City for violation of various civil rights, including unconstitutional search of his home, unlawful arrest and detention, provision of false affidavits to secure a search warrant, malicious prosecution, false imprisonment, and infliction of emotional distress. Plaintiff's Amended Complaint alleged Rodriguez was acting in the scope of employment at all times mentioned in the complaint, as a police officer serving in the capacity of "agent, servant, and employee of the City of Tulsa Police Department." Despite Plaintiff's averments, the City did not

---

[3] The Plan is a non-profit corporation organized under the laws of the state of Ohio with the purpose of payment of legal defenses of Plan participants who are also members of lodges of the Fraternal Order of Police.

provide legal defense and representation to Rodriguez. As a result, money was advanced by the Plan on his behalf for legal services and costs to defend the action.[4]

A motion for summary judgment was filed based upon the doctrine of qualified immunity on August 3. The motion also urged Plaintiff's failure to establish any violation of his constitutional rights. The affidavits and exhibits attached to the motion establish all actions by Rodriguez of which Plaintiff complains were taken while Rodriguez was acting as a police officer in his official capacity. They do not establish any basis for finding that Rodriguez acted in bad faith or with reckless disregard for Plaintiff's rights. Response would have been due on August 21. No extension of time to respond was sought and no response was filed to the motion for summary judgment. Instead, Rodriguez was dismissed with prejudice by stipulation of the parties on October 16. There is nothing in the record to counter the affidavits and exhibits submitted by Rodriguez in support of his motion for summary judgment and the facts for which they were offered are deemed confessed.

## II. ARGUMENTS AND AUTHORITY

Okla. Stat. Ann. tit. 11, § 23-101(C) provides for indemnification of municipal employees in accordance with Okla. Stat. Ann. tit. 51, § 162(B), the Oklahoma General Tort Claims Act ("GTCA"). GTCA is the exclusive means for recovering indemnification from a political subdivision. The GTCA states that any political subdivision shall:

> Provide a defense for any employee . . . . when liability is sought for any violation of property rights or any rights, privileges, or immunities secured by the Constitution or laws of

---

[4] The attorney fees and costs either paid or to be paid by the Plan totaled $20,370.16 prior to the briefing on this issue.

3

> the United States when alleged to have been committed by the employee while acting within the scope of employment.

Thus, the GTCA requires the City to provide a defense to employees in Rodriguez's situation if they are acting in the scope of their employment. *Groseclose v. Tulsa*, 990 P.2d 828, 830 (Okla. 1998).

Scope of employment is defined as "an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority. . . " Okla. Stat. tit. 51, § 152(9). However, for purposes of determining the political subdivision's liability for an employee's acts under the GTCA, " a finding that an officer 'at some time during the episode ... went beyond the bounds of good faith is not necessarily inconsistent with' a finding that the officer acted within the scope of his employment." *Lumpkin v. Little*, 286 F.3d 1206, 1213 (10th Cir. 2002) (quoting *DeCorte v. Robinson*, 969 P.2d. 358, 362 (Okla. 1998)).

Okla. Stat. tit. 51, § 162(B)(3) prohibits indemnification when recovery is under a right of subrogation. Under this provision, all applications for indemnification "shall be filed in the name of the real party or parties in interest, and in no event shall any application be presented nor recovery made under the right of subrogation." Oklahoma courts have defined subrogation as the "substitution of one person in the place of another with reference to a lawful claim, demand, or right." *Hardware Dealers Mut. Fire Ins. Co. V. Krueger*, 486 P.2d 737 (Okla. 1971).

City asserts that Rodriguez's application for indemnification is really an attempt to recover under a right of subrogation as set forth in §18(C) of the Plan and is therefore prohibited under Okla. Stat. tit. 51, § 162(B)(3). However, §18(C) of the Plan also provides:

VACATED

> In the event the subrogation is not permitted for any reason, and the Participant is entitled to receive...payment as the result of any such right of recovery, the Participant shall reimburse Legal Plan, Inc. for all amounts paid by the Plan on behalf of the Participant, up to the amount which the Participant receives.

The inclusion of this language appears to be intended to allow Participants such as Rodriguez to have access to funds advanced by the Plan for their defense without waiving the statutory right to have the City provide a defense.[5] In any event, the Court finds any ambiguity and/or conflict between the two Oklahoma statutes must be resolved in favor of the overriding public interest in providing a defense to those who serve the public and who are ultimately vindicated.[6]

The City also avers that under Okla. Stat. tit. 51, §162(D) it "shall not, under any circumstances, be responsible to pay or indemnify any employee" for damages or fees "which are paid or covered by any applicable policy or contract of insurance...." The City argues that the Plan is, in effect, an insurance policy protecting Rodriguez from paying possible legal fees, thus precluding him from indemnification under GTCA.

Rodriguez responds that the statutory provision upon which the City relies does not apply in this instance, as the City breached its duty to provide legal defense under GTCA. Rodriguez urges the City's assertion regarding the Plan is misleading because at the time the City denied Rodriguez's request for representation, he was not receiving any legal defense from the Plan. Moreover, the Plan is not an insurance plan. Even if it could be

---

[5] Should the Court accept the City's position, Rodriguez would be prohibited from recovering if he had obtained defense funds from a relative, friend or a lending institution and assigned his claim against the City as collateral.

[6] Any claim in subrogation would be in the name of the subrogated party. The application at issue is filed by Rodriguez.

construed as such, it would not be primary by its own terms.[7] It is not a substitute for any obligation to "defend, pay or indemnify under any statute." Rather, it is a benefit extended to members who might otherwise find themselves unable to afford a defense in litigation, no matter how meritorious.

The Court concludes it would be unconscionable to allow the City to evade its statutory obligation pursuant to GTCA under these circumstances. To find otherwise would, in effect, permit the City to regularly circumvent its duties whenever an employee who is sued for actions alleged to have occurred within the scope of his employment is a member of a group which provides members an optional safety net, such as the Plan available through the Fraternal Order of Police. These employees are most likely to be named as defendants in litigation alleging violation of property rights or constitutional rights arising within the scope of their employment. The City cannot shift its statutory obligation by denying legal representation and forcing an employee named as a defendant to look to a secondary source. It is against public policy to leave public employees in such a position. Further, it is against public policy to discourage the creation and maintenance of accounts, such as that available through the FOP plan, from which legal fees can be paid in the event there is a legitimate question as to whether the employee is entitled to be defended by the City. Denial of legal expenses in this case would do just that.

The City's decision to provide legal representation must normally be made at the commencement of litigation, before a judicial determination of liability can be entered.

---

[7] The Plan states: "If any other valid and collectible plan or insurance is obligated to cover and or available to the Participant...then the coverage provided under such other plan or insurance shall be primary coverage." *Id.*

Whether a legal defense is provided must turn upon the allegations in a complaint. GTCA plainly states that the City "shall provide a defense" for allegations of constitutional right violations while acting within the scope of employment. Okla. Stat. Ann. tit. 51, §162(A)(1). Oklahoma case law supports no other conclusion. *Groseclose v. City of Tulsa*, 990 P.2d 828, 830 (Okla. 1998).

There is nothing in the record to indicate why the City declined to defend in this case as to this Defendant. But more importantly, there is nothing in the record which would indicate the City was justified in its decision.

City urges it is entitled to an evidentiary hearing to show that Rodriguez was not acting within the scope of his employment at all times. The Oklahoma Supreme Court has held that when considering an application for indemnification, the court may rely solely on evidence that was presented at trial. *Groseclose*, 990 P.2d 828, 833. This Court has been provided sufficient facts and evidence in the pleadings, including the summary judgment motion and attached exhibits, to determine this issue without evidentiary hearing.

The City denies that Rodriguez was acting within the scope of his employment regarding Plaintiff's claims alleging unlawful search, seizure, and malicious prosecution, arguing that "acts performed with reckless disregard of an individual's rights...lack good faith and fall outside the scope of employment." *Houston v. Reich*, 932 F.2d 883, 890. Rodriguez, however, counters that his acts were "tasks lawfully assigned" to him as a City of Tulsa police officer. Moreover, Rodriguez argues that the arrest, detention, and charges against Plaintiff were "official duties" of his position, despite Plaintiff's protest of the underlying charges. Rodriguez further attests that even if "at some time during the episode" he went "beyond the bounds of good faith," this is not fatal to his case, as he was

7

VACATED

acting in good faith and within the scope of employment during the material allegations of Plaintiff's complaint. *DeCorte v. Robinson*, 969 P.2d. 358, 362 (Okla. 1998). This Court agrees.

The specific allegations against Rodriguez, combined with his later stipulated dismissal from the case, indicate that he was acting within the scope of his employment, as defined by GTCA. The City has not demonstrated that Rodriguez was acting in bad faith or with malicious intent. Accordingly, Rodriguez falls within the scope of the GTCA provisions requiring employees to indemnify their employers for the costs of legal defense in response to allegations of constitutional violations that occurred within the scope of their employment.

## III. RECOMMENDATION

The Court recommends Defendant Rodriguez's Application for Indemnification Against Defendant City of Tulsa [Dkt. #74] should be granted.

## IV. OBJECTIONS

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this Report and Recommendation. Objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within 10 days of being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 6 (as to computation of time periods). If specific written objections are timely filed, the district judge assigned to this case will

> make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has

VACATED

> been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b). *See also* 28 U.S.C. § 636(b)(1).

The Court of Appeals for the Tenth Circuit has adopted a "firm waiver rule" in connection with appeals from orders adopting a Magistrate Judge's report and recommendation. "[T]he failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property,* 73 F.3d 1057, 1059 (10th Cir. 1996) (*quoting Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). **Thus, a timely, specific and written objection is necessary to preserve an issue for *de novo* review by the assigned district judge and for appellate review by the court of appeals.** *See Thomas v. Arn,* 474 U.S. 140 (1985); *Haney v. Addison*, 175 F.3d 1217 (10th Cir. 1999); and *Talley v. Hesse*, 91 F.3d 1411 (10th Cir. 1996).

Dated this 15th Day of June 2007.

Sam A. Joyner
United States Magistrate Judge

VACATED

9